

EOD
03/29/2006

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **THORN BROTHERS CATTLE CO.** | § | Case No. 05-60192 |
| Tax ID xx-xxx5340 | § | |
| 16744 FM 850, Suite 100, Arp, TX 75750 | § | |
| | § | |
| | § | |
| Debtor | § | Chapter 11 |

## MEMORANDUM OF DECISION[1]

This matter is before the Court upon the consolidated hearing of the respective objections of the Debtor and Debtor-in-Possession, Thorn Brothers Cattle Company ("Debtor"), filed on June 6, 2005, to the allowance of proofs of claim #1, #2, #4, and #5 filed by Mack Commercial Finance ("Mack") in the above-referenced case. The Debtor objects to the allowance of the secured portion of each claim upon the assertion that the value of the collateral securing each debt to Mack is substantially less than that asserted in the respective proofs of claim. At the conclusion of the hearing, the Court took the matter under advisement. This memorandum of decision disposes of all issues pending before the Court.[2]

---

[1] This Memorandum of Decision is not designated for publication and shall not be considered as precedent, except under the respective doctrines of claim preclusion, issue preclusion, the law of the case or as to other evidentiary doctrines applicable to the specific parties in this proceeding.

[2] This Court has jurisdiction to consider the confirmation of the Debtor's proposed plan and his claim objection pursuant to 28 U.S.C. §1334(b) and 28 U.S.C. §157(a). The Court has the authority to enter a final order in this contested matter since it constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(A), (B), and (O).

**Background**

Thorn Brothers Cattle Company filed for relief under Chapter 11 of the Bankruptcy Code on January 27, 2005. On February 4, 2005, Mack filed six secured proofs of claim, each secured by a commercial truck or either a livestock or flat-bed trailer. Excluding the two claims secured by the livestock trailers, the Debtor challenged the valuation of the remaining collateral as follows:

| Claim No. | Collateral | POC Valuation | Debtor's Valuation |
|---|---|---|---|
| 1 | 2000 Kenworth W900L Truck | $ 41,375.00 | $ 32,900.00 |
| 2 | 2004 Kenworth W900L Truck | $ 85,908.25 | $ 60,950.00 |
| 4 | 2004 Fontaine flat-bed trailer | $ 16,000.00 | $ 10,500.00 |
| 5 | 2005 Kenworth W900L Truck | $ 97,076.32 | $ 74,500.00 |

Having no dispute regarding the amount of the indebtedness or the validity of the lien asserted by Mack against each piece of collateral, the parties submitted expert testimony as to the valuation of the collateral. At the conclusion of the hearing, the Court took the matter under advisement.

**Discussion**

A proof of claim, if it is executed and filed in accordance with the Federal Rules of Bankruptcy Procedure, constitutes *prima facie* evidence of the validity and amount of that claim, FED. R. BANKR. P. 3001(f), and is deemed allowed unless a party in interest

objects under 11 U.S.C. §502(a).  A proof of claim, however, does not qualify for that *prima facie* evidentiary effect if it is not executed and filed in accordance with the Bankruptcy Rules.  *See First Nat'l Bank of Fayetteville v. Circle J. Dairy (In re Circle J Dairy, Inc.)*, 112 B.R. 297, 300 (W.D. Ark. 1989).  Rule 3001 generally sets forth the requirements for filing a proof of claim, and one of those requirements states that:

> when a claim . . . is based on a writing, the original or a duplicate shall be filed with the proof of claim.  If the writing has been lost or destroyed, a statement of the circumstances of the loss or destruction shall be filed with the claim.

FED. R. BANKR. P. 3001(c).

Likewise, if a creditor claims a security interest in property of the debtor, Rule 3001(d) requires the creditor to accompany his proof of claim with evidence that the creditor perfected a security interest.

Hence, the burden of persuasion under the bankruptcy claims procedure always lies with the claimant, who must comply with FED. R. BANKR. P. 3001 by alleging facts in the proof of claim that are sufficient to support the claim.  If the claimant satisfies these requirements, the burden of going forward with the evidence then shifts to the objecting party to produce evidence at least equal in probative force to that offered by the proof of claim and which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency.  *See Lundell v. Anchor Const. Specialists, Inc. (In re Lundell)*, 223 F.3d 1035, 1041 (9th Cir. 2000); *Sherman v. Novak (In re Reilly)*, 245 B.R.

768, 773 (B.A.P. 2d Cir. 2000). This can be done by the objecting party producing specific and detailed allegations that place the claim into dispute, *see World Sav. and Loan Ass'n v. Lenz (In re Lenz)*, 110 B.R. 523, 525 (D. Colo. 1990); by the presentation of legal arguments based upon the contents of the claim and its supporting documents, *see In re Circle J Dairy*, 112 B.R. at 300; or by the presentation of pretrial pleadings, such as a motion for summary judgment, in which evidence is presented to bring the validity of the claim into question, *see T. J. Shown Assoc., Inc. v. Frontier Airlines, Inc. (In re Frontier Airlines, Inc.)*, 112 B.R. 395, 399-400 (D. Colo. 1990). If the objecting party meets these evidentiary requirements, then the burden of going forward with the evidence shifts back to the claimant to sustain its ultimate burden of persuasion to establish the validity and amount of the claim by a preponderance of the evidence. *See Consumers Realty & Dev. Co. v. Goetze (In re Consumers Realty & Dev. Co.*, 238 B.R. 418 (B.A.P. 8th Cir. 1999); *In re Alleghany Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992).

Since Mack filed each of its claims in compliance with the Federal Rules of Bankruptcy Procedure, including the attachment of a copy of the promissory note upon which its claim is allegedly based, each of the claims is entitled to *prima facie* validity. To rebut that effect, the Debtor essentially alleged that the replacement value of the three commercial trucks and the flat-bed trailer was far less than the amounts asserted in the proofs of claim and the evidence submitted by the Debtor at the hearing was sufficient to bring the legitimacy of the secured portion of each claim into question and to overcome

the *prima facie* validity of each such claim. Thus, it becomes incumbent upon Mack to establish the validity and amount of its claim by a preponderance of the evidence.

To uphold its burden, Mack relied upon the testimony of Kevin Miller, a re-marketing manager employed by Mack and by Volvo Commercial Finance for the past eight years.[3] A holder of an engineering degree with a specialization in truck applications, Mr. Miller spent 20 years with G.E. Capital Fleet Services and during that tenure he began working in the re-marketing sector in 1988. He has familiarity with all truck makes in both regional and national markets and typically is involved with the valuation of almost 300 trucks per month for Mack, approximately 10% of which involves his personal inspection, and he fields approximately 60 to 75 calls per day from (primarily Mack) dealers regarding the valuations of trucks. He is familiar with trucks and trailers utilized in the livestock transportation industry. He is a member of numerous professional organizations within the industry, including the Used Truck Association, the ASE (certified heavy truck mechanic), and the NADA.

With regard to the trucks owned by the Debtor, Mr. Miller testified that the Kenworth truck is a premium truck of substantial value --- not a mass-produced fleet truck --- and that its reliability and durability allows used Kenworths to retain a higher value as a used truck than most other brands. Acknowledging that the Kenworth brand is

---

[3] Mr. Miller described "re-marketing" activities as the efforts of truck companies to re-sell vehicles which have been returned to the company as a result of repossession or at the conclusion of a lease term.

one of the top two truck brands in its category, Miller stated that the trucks owned by the Debtor are high-end, specialty units that are in high demand in the marketplace. Such demand has not been generally abated by the prevalence of high fuel costs, which are usually passed through to the consumer, and he testified that the trucks similar to those owned by the Debtor remain popular with truck buyers.

Mr. Miller acknowledged that he did not personally inspect the Debtor's trucks. He relied instead upon information regarding the condition of the vehicles supplied by Brett Thomas, the appraiser commissioned by the Debtor. Based upon the information supplied, Mr. Miller reviewed the following categories of value obtained from various sources for the various pieces of collateral :

| Collateral | Wholesale | Retail | Truck Bluebook | POC value[4] |
| --- | --- | --- | --- | --- |
| 2005 Kenworth | $92,000 | $102,000 | $110,470 | $97,076.32 |
| 2004 Kenworth | $80,975 | $93,275 | $ 91,583 | $85,908.25 |
| 2000 Kenworth | $44,175 | $52,150 | $ 54,250 | $41,375.00 |
| 2004 Fontaine | $15,675 | $19,275 | n/a | $16,000.00 |

The Debtor tendered the testimony of Brett Thomas, who has been involved in all types of equipment sales as a salesman for 15 years and as an auctioneer for almost 30

---

[4] The listed amount is the amount stated as the value of the collateral, as of the date of bankruptcy filing, by Mack Commercial Finance on the individual proofs of claim filed for each listed vehicle on February 4, 2005. Mr. Miller did not participate in the filing of the proofs of claim, but he furnished the values to Mack.

years, primarily in the Ark-La-Tex area.[5] He has extensive experience in the sale of trucks at auction, though Mr. Thomas acknowledged that he does not provide services for Kenworth truck dealers and that his exposure to Kenworth trucks is somewhat limited (no auctions of Kenworth vehicles in past 6 months). As mentioned previously, he conducted physical inspections of each piece of collateral, and produced condition reports for each vehicle. He also consulted auction results in the East Texas area for Kenworth trucks obtained within the past 30 days. He further testified that the current high fuel costs would have an adverse effect on the sale of Kenworth trucks, thereby depressing their replacement value, due to fuel inefficiencies associated with Kenworths. As a result of his study, Mr. Thomas offered the following valuations:

| Collateral | Debtor's Valuation |
| --- | --- |
| 2000 Kenworth W900L Truck | $ 32,900.00 |
| 2004 Kenworth W900L Truck | $ 60,950.00 |
| 2004 Fontaine flat-bed trailer | $ 10,500.00 |
| 2005 Kenworth W900L Truck | $ 74,500.00 |

It has been long recognized that "[v]aluation outside the actual market place is inherently inexact." *Rushton v. Comm'r*, 498 F.2d 88, 95 (5th Cir. 1974). *See also Boyle v. Wells (In re Gustav Schaefer Co.)*, 103 F.2d 237, 242 (6th Cir.), *cert. denied*, 308 U.S. 579, 60 S.Ct. 96, 84 L.Ed. 485 (1939) ["The valuation of property is an inexact science

---

[5] He is licensed as an auctioneer in Arkansas, Louisiana, South Carolina, and Texas.

and whatever method is used will only be an approximation and variance of opinion by two individuals does not establish a mistake in either."]; *In re Montgomery Court Apartments of Ingham County, Ltd.*, 141 B.R. 324, 337 (Bankr. S.D. Ohio 1992) ["Valuations of ... property, like projections of income and expenses, are inherently imprecise. Opinions realistically may differ, depending upon the method of valuation used and the nature of assumptions adopted"]. Because the valuation process often involves the analysis of conflicting appraisal testimony, a court must necessarily assign weight to the opinion testimony received based on its view of the qualifications and credibility of the parties' expert witnesses. *In re Coates*, 180 B.R. 110, 112 (Bankr. D.S.C. 1995) ["The valuation process is not an exact science and the court must allocate varying degrees of weight depending upon the court's opinion of the credibility of . . . [the appraisal] evidence."].

In weighing conflicting appraisal testimony, courts generally evaluate a number of factors, including the appraiser's education, training, experience, familiarity with the subject of the appraisal, manner of conducting the appraisal, testimony on direct examination, testimony on cross-examination, and overall ability to substantiate the basis for the valuation presented. *In re Smith*, 267 B.R. 568, 572-73 (Bankr. S.D. Ohio 2001). A bankruptcy court is not bound to accept the values in the parties' appraisals; rather, it may form its own opinion of the value of the subject property after considering all of the evidence presented. *Holcomb Health Care Servs. v. Quart Ltd., L.L.C. (In re Holcomb*

*Health Care Servs., L.L.C.),* 329 B.R. 622, 669 (Bankr. M.D. Tenn. 2004). With these principles in mind, the Court must weigh the evidence offered by the parties in support of their respective positions regarding the replacement value of the Collateral.

The expert evidence submitted to the Court varied widely but, on the whole, the Court finds Mr. Miller's testimony, though not inerrant, to be more credible than that offered by Mr. Thomas. Mr. Miller has far more experience in dealing with the resale of commercial trucks in general, and Kenworth products in particular, than does Mr. Thomas. Miller's expertise in evaluating the market through which commercial trucks are sold and the factors which affect a buyer's behavior in that market is compelling, though Miller's failure to engage in a physical inspection of the actual vehicles and his obvious connection with Kenworth tempers the compelling nature of his testimony. The Court has closely reviewed the condition report submitted by Mr. Thomas, although there is actually little information supplied by Thomas which correlates his inspection reports to his conclusions.[6] He failed to explain the wide deviation of his valuation opinions from those reflected in the generally-accepted valuation publications, although his description of the condition of the 2004 Kenworth truck warrants a greater value reduction than that asserted by Mack. However, Thomas' relative inexperience in dealing with these types of vehicles on a continuing basis otherwise limits the persuasiveness of his opinions and the

---

[6] That correlation failure becomes particularly apparent with reference to his valuation of the 2000 Kenworth, the value of which was already subjected to serious depreciation by Mack, and his valuation of the flat-bed trailer.

technological advances in the manner by which such vehicles are "re-marketed" throughout the country, as outlined by Mr. Miller, limits the significance of variations in the local market and Mr. Thomas' experience in it.

Again, the court is not bound by the precise values tendered by appraisal experts and the Court has reviewed all of the evidence in an effort to form its own opinion regarding the value of the three trucks and the trailer. Based upon a review of the evidence, including the condition report pertaining to each piece of collateral contained in the Debtor's appraisal report, the Court finds that the replacement value of the collateral, as of the date of the filing of the voluntary petition in this case, is as follows:

| Claim No. | Collateral | Valuation |
| --- | --- | --- |
| 1 | 2000 Kenworth W900L Truck | $ 41,375.00 |
| 2 | 2004 Kenworth W900L Truck | $ 79,500.00 |
| 4 | 2004 Fontaine flat-bed trailer | $ 16,000.00 |
| 5 | 2005 Kenworth W900L Truck | $ 95,000.00 |

Therefore, based upon the evidence presented and for the reasons expressed herein, the Court concludes that the objections filed by the Debtor, Thorn Brothers Cattle Company to the allowance of proof of claim #1 and proof of claim #4 filed by Mack Commercial Finance, respectively, are each denied. The Debtor's objection to the allowance of proof of claim #2 must be sustained in part and denied in part and claim #2 filed by Mack is hereby allowed as a secured claim in the amount of $79,500.00, and the

remaining amounts of such claim shall be allowed as a general unsecured claim. The Debtor's objection to the allowance of proof of claim #5 must be sustained in part and denied in part and claim #5 filed by Mack is hereby allowed as a secured claim in the amount of $95,000.00, and the remaining amounts of such claim shall be allowed as a general unsecured claim. All other relief requested by any party is denied.

This memorandum of decision constitutes the Court's findings of fact and conclusions of law[7] pursuant to Fed. R. Civ. P. 52, as incorporated into contested matters in bankruptcy cases by Fed. R. Bankr. P. 7052 and 9014. Separate orders will be entered which are consistent with this opinion.

Signed on 3/29/2006

*/s/ Bill Parker*

THE HONORABLE BILL PARKER
CHIEF UNITED STATES BANKRUPTCY JUDGE

---

[7] To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The Court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.